# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DESIGN BASICS LLC,**

           Plaintiff,

       **-vs-**


**CAMPBELLSPORT BUILDING SUPPLY, INC.;**
**BERLIN BUILDING SUPPLY, INC.;**
**KIEL BUILDING SUPPLY, INC.;**
**DREXEL, INC.,**
**DREXEL BUILDING SUPPLY, INC.;**        **Case No. 13-C-560**
**JOEL M. FLEISCHMAN**
**also known as**
**JOEL C. FLEISCHMAN, and**
**ALBERT J. FLEISCHMAN,**

          Defendants and
          Counterclaim-Defendants,

      and

**WILSON MUTUAL INSURANCE COMPANY,**

          Intervenor Defendant and
          Counterclaimant.

---

# DECISION AND ORDER

---

Plaintiff Design Basics LLC, owner of copyrighted building plans, alleges that the Defendants, competitors in the home design industry, have infringed on 64 of its copyrighted plans. The Defendants counterclaim that the copyrights are invalid. Design Basics' motions for costs and for partial

summary judgment on its copyright claims (ECF Nos. 128, 134) and the Defendants' motion for summary judgment dismissing Design Basics' claims (ECF No. 129) are ready for resolution and addressed herein.

## MOTION FOR COSTS

Design Basics asserts that the Defendants should compensate investigators John C. White, John M. Pratt, and Norman Barnard as experts for time spent preparing for and participating in depositions taken by the Defendants. (ECF No. 128.) The Defendants assert that Design Basics has not provided legal authority to support its claim for additional compensation beyond the mileage reimbursement and $40 witness fees previously paid to the investigators.

The Federal Rules of Evidence distinguish between lay and expert testimony. Lay testimony is evidence consisting of opinions or inferences "rationally based on the witness's perception," Fed. R. Evid. 701(a), whereas expert testimony is that evidence founded on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). In the context of criminal investigations, Seventh Circuit case law has discussed lay and/or expert testimony of investigators. *See, e.g., United States v. Rollins,* 544 F.3d 820, 832-33 (7th Cir. 2008); *United States v. Oriedo,* 498 F.3d 593, 603 (7th Cir. 2007). When testimony involves only an investigator's "own

- 2 -

personal observations and perceptions derived from [the] particular case" at hand, the testimony is lay testimony. *Rollins,* 544 F.3d at 833. However, when an investigator's testimony is not "limited to what he observed in [a given] search or to other facts derived exclusively from [the] particular investigation" at issue, and instead involves the investigator bringing his "wealth of experience . . . to bear on those observations," the testimony is expert testimony. *Oriedo,* 498 F.3d at 603.

Design Basics listed the investigators as potential lay witnesses; they were not identified as experts. Design Basics has not established that its investigators should be deemed expert witnesses. Consequently, its motion for costs (ECF No. 128) is denied.

## SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT MOTIONS

The Defendants assert that Design Basics' action should be dismissed as a sanction due to its spoliation of evidence by intentionally destroying files that would have established the authorship of the copyrighted building plans. Alternatively, the Defendants assert that some claims should be dismissed for lack of evidence or because the infringements predate the effective date of the Digital Millennial Copyright Act (DMCA), 17 U.S.C. § 1202.

- 3 -

Design Basics requests partial summary judgment finding that it is the owner of valid copyrights in the 64 works at issue in this litigation. It maintains that eleven affirmative defenses should be dismissed.

## Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Summary judgment should be granted when a party that has had ample time for discovery fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* If the moving party establishes the absence of a genuine issue of material fact, the non-moving party must demonstrate that there is a genuine dispute over the material facts of the case. *Id.* at 323-24. The Court must accept as true the evidence of the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Summary judgment is appropriate only "where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party." *See Bunn v. Khoury Enters., Inc.,* 753 F.3d 676, 682 (7th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

- 4 -

475 U.S. 574, 587 (1986)). On cross-motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.,* 427 F.3d 1038, 1041 (7th Cir. 2005); *see also Laskin v. Siegel,* 728 F.3d 731, 734 (7th Cir. 2013).

## Relevant Facts[1]

Since the early 1980s, Design Basics, an Omaha, Nebraska home plan design company, has created, marketed, published and licensed the use of architectural works. Sometime after its inception, the business was established as a corporation, Design Basics, Inc. In 2009, the business was purchased by Patrick Carmichael and Myles Sherman, who created DBI Holdings, LLC, a Nebraska limited liability company. They merged DBI with Design Basics, Inc. and restructured the business into the Plaintiff limited liability corporation, which owns all assets of the previously separate pre-merger entities, including all intellectual property of Design Basics, Inc. Design Basics owns copyrights in certain home plans/designs published in various nationally-circulated home-design catalogs.[2]

The Defendants sell raw building materials such as shingles, siding,

---

[1] The relevant facts are based on the parties' proposed findings of fact to the extent they are undisputed and are facts. The legal conclusions are not facts.

[2] There is a genuine dispute of material fact regarding the validity of the copyrights asserted by Design Basics in this action. (*See* Defs. Resp. Pl. Proposed Statement of Undisputed Facts (PSUF), ¶ 2, ECF No. 152.)

- 5 -

windows, lumber, flooring, cabinets and trim to building contractors, retailers and their clients, and they employ draftspeople for residential home designs. The Defendants have five Wisconsin locations — Brookfield, Kiel, Campbellsport, Berlin, and Wrightstown.

Since it was founded, Design Basics has been a major national publisher of plan catalogs and no-cost magazine-styled promotional mailers in which its copyrighted works are marketed. Before the advent of the World Wide Web, Design Basics was the nation's largest publisher of home plan catalogs, allowing customers to order catalogs by phone or by direct purchase in many home improvement stores and lumberyards across America. Since the popularity of the World Wide Web, Design Basics' plans have been widely disseminated throughout the United States.

In 1996, Design Basics launched a website, www.designbasics.com. However, not all its copyrighted plans were added to the website until 1998 or 1999. Design Basics maintains the website to advertise and market all of its copyrighted works by publishing designs in user-friendly and easily accessible online storefront. Determination of the precise date that any particular plan was added to Design Basics website is not possible. The works shown in Design Basics' home design catalogs and its website display its copyright management information (CMI), giving notice to

- 6 -

customers and potential customers that Design Basics owns those copyrighted plans.

In 1988, Design Basics designated an architectural work the "Trenton," and registered it with the United States Copyright Office on August 18, 1988.[3] In 1989, Design Basics designated an architectural work the "Rosebury," and registered it with the United States Copyright Office on October 11, 1989.

In copyright litigation prior to January 2010, Design Basics produced copies of its original design files in discovery and was aware that its original design files would be relevant information in any copyright infringement litigation. Design Basics knew that defendants in such lawsuits have a legitimate interest in seeing original design files to confirm authorship and originality and that it would be in its best interest to preserve those files.

In January 2010, Design Basics was replacing the flat roof of its main facility. The melting of large snowfall accumulation on that roof, followed by a heavy rainfall, created undue pressure and compromised the roof's integrity, resulting in a severe breach of the roof/ceiling and damaging the facility's contents.

---

[3] The Defendants contest the validity of the Trenton and Rosebury copyrights.

- 7 -

Janie Murnane, Design Basics' chief financial officer, oversaw the clean-up process. Design Basics retained Terracon Consultants, Inc. to perform an assessment of the general health of the building, and Murnane served as liaison to Tarracon's industrial hygienist, Randy Milbrath. Milbrath told Murnane that any porous materials such as cellulose (paper, cardboard, etc.) that had been wet should be removed from the building because they could negatively impact the air quality.

Milbrath also told Murnane that if the banker boxes (which contained the original authorship records) were allowed to sit for 48 hours or longer, there was a greater likelihood that mold would grow, and spread through the building.

In an effort to clear the building, Design Basics moved all the water-damaged files/boxes out so that the water extraction company could remove standing water from the building and the mold inspection company could assess and test designated areas of the facility. Affected files/boxes were relocated based on the severity of damage. The most salvageable files were moved to a garage and warehouse so that staff could sort through their contents. The most damaged files were moved to Design Basics' previous Customer Call Center. Murnane was not aware that Design Basics' original authorship records were stored in cardboard banker boxes marked

- 8 -

with "customer change order" numbers and bearing dates indicating that their contents were at least five years old.

Design Basics destroyed those banker boxes and their contents. When Design Basics destroyed its original design files,[4] they were not scanned onto a computer. Although the original physical drawings were destroyed, Design Basics has produced to the Defendants digital copies of its home plan designs, plan catalogs, web advertisements, and deposit materials submitted to the Copyright Office.

On May 19, 2010, while marketing its works to previous customers, Design Basics discovered that a Wisconsin home builder, Signature Homes, had been marketing and selling homes which Design Basics asserts are three-dimensional copies of its copyrighted works. Design Basics maintains that Signature's website shows an "Allister" plan which is a three-dimensional copy of Design Basics' copyrighted "Ambrose" plan and infringes on Design Basics' copyright, and that the "Allister" plan contained the notation "Plans copyrighted by: Campbellsport Building Supply."[5] Subsequently, Design Basics sent licensed private investigators

---

[4] There is a genuine dispute of material fact regarding when the original design files were destroyed. (*See* Defs. Resp. Pl. PSUF, ¶ 37.)

[5] There are genuine disputes of material fact as to whether the Allister plan was copied from the Ambrose plan and/or is substantially similar the Ambrose plan. (*See*

- 9 -

to the Defendants' locations to determine the nature and extent of infringement activities. Design Basics claims the investigation revealed that the Defendants immediately copied three of Design Basics' works, even while acknowledging that such activity constituted copyright infringement.

As a result of its inspection of the Defendants' computer assisted design drawings and blueprints in this action, Design Basics claims that the Defendants have infringed upon an additional 61 of its copyrighted works by copying,[6] advertising, marketing, and distributing accused designs to home builders who have constructed at least 146 houses.[7] Four allegedly infringing works are dated prior to October 28, 1998.

Design Basics claims that it is the original author of all plans the Defendants allegedly infringed, and it denies that any of its plans were based on any previous works. In discovery Design Basics has denied that it destroyed any documents that relate to or concern this litigation. It states that most of its original design files were destroyed due to the January

---

Defs. Resp. Pl. PSUF, ¶ 10.)

[6] There are genuine disputes of material fact as to whether the Defendants' business practice included copying plans and placing the Defendants' CMI on them regardless of whether the Defendants' blueprint was a copy of another designer's intellectual property. (*See* Defs. Resp. Pl. PSUF, ¶¶ 16-18, 21-22.)

[7] There are genuine disputes of material fact as to whether the Defendants copied any plans and/or whether they are substantially similar to Design Basics' plans. (*See* Defs. Resp. Pl. PSUF, ¶¶ 13-15.)

2010 water damage, which prevents it from producing the original design sketches for the plans that the Defendants allegedly infringed.

*Spoliation*

Asserting that Design Basics intentionally destroyed information it knew was relevant to this litigation, the Defendants maintain that this action should be dismissed based on spoliation. Design Basics counters that (1) dismissal is an inappropriate sanction for records lost due to a natural disaster; (2) when the records were destroyed it had no duty to preserve them; (3) the Defendants have not been harmed because it has produced sufficient evidence of copyright validity; (4) its conduct does not rise to the requisite level of culpability to warrant dismissal; and (5) *Design Basics, LLC v. Jim Marhofer, et al.,* No. 12-14894 (E.D. Mich. June 15, 2015), relied upon by the Defendants, does not support dismissal.

Assessing whether spoliation occurred is a two-part inquiry: (1) "[C]ourts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask-Morton v. Motel 6 Operating L.P.,* 534 F.3d 672, 681 (7th Cir. 2008); *see also Norman-Nunnery v. Madison Area Tech. Coll.,* 625 F.3d 422, 428 (7th Cir. 2010); (2) a showing of "bad faith" is "a prerequisite to imposing sanctions for the destruction of

- 11 -

evidence." *Trask-Morton,* 534 F.3d at 681. "'[B]ad faith' means destruction for the purpose of hiding adverse information." *Mathis v. John Morden Buick, Inc.,* 136 F.3d 1153, 1155 (7th Cir. 1998); *see also Bracey v. Grondin,* 712 F.3d 1012, 1019 (7th Cir. 2013).

Sanctions for spoliation may not be imposed simply because evidence was destroyed; instead, such sanctions are appropriate only if the evidence was destroyed for the purpose of hiding adverse information. *See e.g., Park v. City of Chi.,* 297 F.3d 606, 615 (7th Cir. 2002) (citation omitted) ("[T]he crucial element is not that evidence was destroyed but rather the reason for the destruction."). The movant bears the burden to make this showing. *Bracey,* 712 F.3d at 1019.

Without citation to authority, the Defendants maintain that in the wake of the water damage, Design Basics had a duty to preserve evidence that was relevant to this lawsuit. The water damage occurred in January 2010. Design Basics was not aware of an infringement relevant to this lawsuit until May 19, 2010 and it did not file this action until May 2013. There is a genuine dispute of material fact regarding when the original design files were destroyed. However, considering the facts in the light most favorable to Design Basics (the nonmovant on the spoliation issue), the Court cannot conclude that Design Basics had a duty to preserve

- 12 -

evidence as of the date the water damaged boxes of papers were destroyed.

Additionally, construing the facts in the light most favorable to Design Basics, a reasonable jury could find that at the time of destruction Design Basics believed that the boxes contained "custom change" order numbers, as labeled, and there was no indication that any of the boxes contained original authorship records. (Murnane Decl. ¶ 7, ECF No. 149.) A reasonable jury could also find that the boxes and contents were destroyed because of concern for the health and safety of Design Basics' employees and not for the purpose of hiding adverse information.

Additionally, *Marhofer*, No. 12-14894, was a magistrate judge's recommendation that was not acted upon by the district judge — the parties settled the case prior to any decision on the spoliation issue by the district judge. Even so, rather than recommending dismissal, the magistrate judge suggested giving an instruction on an adverse inference based on the destruction of the papers.

Based on the foregoing, the Defendants have not established that this action should be dismissed based on spoliation. Consequently, the Court addresses the Defendants' alternative contentions.

*Lack of Access*

The Defendants seek dismissal of 13 infringement claims relating to

- 13 -

Design Basics' Trenton and Rosenbury plans, maintaining they did not have access to the plans. Design Basics counters that the Defendants had a reasonable opportunity to view its works, and that access may be established by a plaintiff's showing that the plan has been highly disseminated.

The copyright statutes provide:

> Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories: . . . (8) architectural works.

17 U.S.C. § 102(a).

> An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101.

To establish copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991); *Nova Design Build, Inc. v. Grace Hotels, LLC,* 652 F.3d 814, 817-18 (7th Cir. 2011). Copying may be inferred where the

- 14 -

"defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *Incredible Techs., Inc. v. Virtual Techs., Inc.,* 400 F.3d 1007, 1011 (7th Cir. 2005) (citations omitted.) Access is shown where the defendant had an opportunity to view the copyrighted item. *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 508 n.5 (7th Cir. 1994). "It is not essential to prove access, however;" if "two works are so similar as to make it highly probable that the later one is a copy of the earlier one, the issue of access need not be addressed separately . . ." *JCW Invs., Inc. v. Novelty, Inc.,* 482 F.3d 910, 915 (7th Cir. 2007) (citation omitted).

Substantial similarity is determined by asking "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Wildlife Express,* 18 F.3d at 509 (citation omitted). The test is traceable to Judge Learned Hand's *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960), which states that two works are substantially similar if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Wildlife Express,* 18 F.3d at 509.

- 15 -

With respect to the first element of copyright infringement, Design Basics obtained certificates of registration for the subject plans from the United States Register of Copyrights. Registration establishes a rebuttable presumption as to a copyright's validity. *See* 17 U.S.C. § 410(c); *see also, Wildlife Express,* 18 F.3d at 507.

However, there are genuine disputes of material fact about whether the accused works are substantially similar to Design Basics' copyrighted Trenton and Rosebury plans.[8] Construing the evidence in the light most favorable to Design Basics, a reasonable jury could find that the works are so similar as to make it highly probable that the 13 accused homes are copies of the Trenton and Rosenbury plans.

Additionally, the Trenton and Rosebury plans were designated and registered by Design Basics in 1988 and 1989, respectively. Construing the evidence of the widespread distribution of Design Basics' plans in the

---

[8] Although the parties focus on other issues, before comparing the two works the Court must first identify "which aspects of the [plaintiff's] work, if any, are protectable by copyright. . . ." *Nova Design Build, Inc. v. Grace Hotels, LLC,* 652 F.3d 814, 817-18 (7th Cir. 2011) (quoting *Tiseo Architects, Inc. v. B & B Pools Serv. and Supply Co.,* 495 F.3d 344, 348 (6th Cir. 2007).) The protectable elements are those that possess originality. *Id.* at 818. Originality requires that the elements be independently created and possess at least some minimal degree of creativity. *Id.* Absent arguments by the parties, the Court does not address originality.

After identifying these original, protectable elements, the Court analyzes whether the allegedly infringing work is "so similar to the [plaintiff's] work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated" the protectable elements of the work. *Id. See also, Design Basics LLC v. J & V Roberts Investments, Inc.,* 130 F. Supp. 3d 1266, 1276 (E.D. Wis. 2015). This requires a side-by-side comparison of the works. *J & V Roberts Inv., Inc.,* 130 F. Supp. 3d at 1276.

- 16 -

early 1980s and that it was the largest publisher of home plan catalogs prior to the World Wide Web in the light most favorable to Design Basics, a reasonable jury could find that the Defendants had access to those plans. There is also evidence that the Defendants disregarded other designers' copyright designations and replaced them with their own. Based on the foregoing, summary judgment on this issue is denied.

## DMCA Claims

The Defendants assert that the following DMCA infringement claims should be dismissed: (1) eight infringement claims that pre-date the DMCA's enactment[9]; and (2) any infringement claims for which Design Basics cannot offer evidence sufficient to prove a DMCA violation as to each specific infringement. Design Basics asserts that it has presented sufficient evidence to prove a DMCA violation as to each alleged act of infringement.

However, Design Basics has not addressed the Defendants' contention regarding the eight claims that predate the DMCA's enactment. Most provisions of the DMCA are effective on the date of enactment; that is, October 28, 1998. 1 *Lindey on Entertainment, Publ. & the Arts* § 1:49

---

[9] The Defendants have not identified these eight claims. However, the attachment to the Amended Complaint lists the following files: T-94-194; 94-170; 96-220; 97-103; T98-226; T98-227; 98-118; 98-228, to which the Defendant are likely to be referring.

(3d ed.).

By not expressly addressing it, Design Basics has waived the opportunity to contest dismissal of those eight infringement claims. It is not the role of the Court to make arguments for parties. Furthermore, given the DMCA's effective date, the Defendants have established that the eight claims predating October 28, 1998, are subject to dismissal.

With respect to the balance of the DMCA infringement claims, and viewing the disputed evidence regarding the Defendants' business practices in the light most favorable to Design Basics, a reasonable jury could find that the Defendants violated the DMCA by removing Design Basics' CMI, or by falsifying the CMI on plans that it produced.

Based on the foregoing, the Defendants' motion for summary judgment is granted with respect to the dismissal of eight infringement claims predating the DMCA's October 28, 1998, enactment, and denied in all other respects.

## Validity of Copyrights

Design Basics asks for partial summary judgment finding that it owns valid copyrights in the 64 works at issue in this litigation relying on the copyright registration, as well as the facts in the Carmichael and Carl Cuozzo declarations (ECF Nos. 137-42, 155, 155-1) that it asserts establish

- 18 -

the minimal level of creativity for copyright protection.

In opposition, the Defendants rely on spoliation and factual disputes about whether the Design Basics plans contain elements that are original or creative. They also assert that Design Basics' evidence establishes the Colbourne plan copyright is owned by Plan Pros, Inc., not Design Basics, warranting dismissal of any claims based on alleged infringement of Colbourne.

The Defendants rely on the evidence regarding the destruction of the original design files following the January 2010 roof leak, and state that they will request an adverse inference instruction based on the spoliation of Design Basics original design files. The spoliation issue precludes resolution of copyright validity upon summary judgment.

Whether a particular work is copyrightable is an issue of law for the court. *Schrock v. Learning Curve Int'l, Inc.,* 586 F.3d 513, 517 (7th Cir. 2009) (citations omitted); *Janky v. Lake Cty. Convention and Visitors Bureau,* 576 F.3d 356, 363 (7th Cir. 2009). *See also Pivot Point Int'l, Inc. v. Charlene Prod., Inc.,* 932 F. Supp. 220, 225 (N.D. Ill. 1996) (Easterbrook, J., sitting by designation) (holding that, "[w]hether [items] are copyrightable is a question of law, which the court will decide. . . . A jury has nothing to do with this subject."); 3-12 Melville B. Nimmer &

- 19 -

David Nimmer, *Nimmer on Copyright* § 12.10[B][1] (2015) ("determinations of copyrightability in all instances" are reserved to the judge and therefore are appropriate for summary judgment).

Although Design Basics notes that seven of its plans, including the Adair, Prairie and Waverly, have been found to be sufficiently original to warrant copyright protection based on "the particular selection, arrangement, and combination of individual elements," *J & V Roberts Inv., Inc.,* 130 F. Supp. 3d at 1276,[10] it has not addressed the specific originality of all 64 plans. Instead, it maintains that because it created the plans, they are original. However, as reflected by the case law on the issue as outlined above, Design Basics oversimplifies. Before this action proceeds to trial, Design Basics should provide a specific explanation as to why it believes each of the 64 plans is original.

The Defendants also rely on the opinions of Robert C. Greenstreet, Ph.D., Dean of the University of Wisconsin-Milwaukee, Department of Architecture and Urban Planning, that every Design Basics plan at issue in this litigation lacks originality and creativity. An invalidating lack of originality can be established by meeting the same test that a copyright

_____

[10] Of course, this Court is not obligated to follow *J & V Roberts Inv., Inc.,* 130 F. Supp. 3d at 1276.

- 20 -

owner must meet to prove infringement: either by direct evidence of copying a preexisting work or by proving access to the preexisting work combined with substantial similarity. *Foamation, Inc. v. Wedeward Enter., Inc.,* 947 F. Supp. 1287, 1296 (E.D. Wis. 1996).

Construing the evidence in the light most favorable to the non-moving Defendants, a reasonable jury could find in their favor; therefore, this issue cannot be resolved on summary judgment. Design Basics' request for partial summary judgment on the issue of the validity of its copyrights is denied.

Although not specifically so moving, the Defendants assert that any claims based on the Colbourne plan must be dismissed because Design Basics does not own the copyright. Design Basics has not responded to this assertion.

The Colbourne copyright (ECF No. 135-9) was issued to Plan Pros. Design Basics has not shown ownership of a valid copyright in the plan or a written assignment of the copyright, see 17 U.S.C. § 204; *ITOFCA, Inc. v. Megatrans Logistics, Inc.,* 322 F.3d 928, 931 (7th Cir. 2003). Thus, there is no evidence upon which a reasonable jury could find the first element of copyright infringement — ownership. Therefore, any copyright claims based on the Colbourne plans are dismissed.

- 21 -

## Defendants' Affirmative Defenses – One through Six, and Nine through Thirteen

Design Basics maintains that eleven of the Defendants' affirmative defenses (one through six and nine through thirteen) must be dismissed; it filed the Defendants' discovery responses regarding the defenses to support the motion.[11]  (*See* LeJune Dec. ¶ 3, Ex. A (Defs.' Jan. 20, 2014, Fourth Supplemental Response to Pl.'s First Interrog., Resp., ECF Nos. 154, 154-1).

The Defendants contend they are not required to provide supporting evidence at this stage.  They also specifically oppose dismissal of the statute of limitations, improper joinder, failure to mitigate, ownership of valid copyrights and substantial similarity defenses.

With respect to affirmative defenses, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Certain Underwriters of Lloyd's and Cos. Subscribing to Excess Aviation Liability*

---

[11] With the exception of the ninth affirmative defense which is erroneously referred to as the tenth, the Defendants' discovery responses correspond to the numbering of the affirmative defenses in the answer filed on July 17, 2013. (ECF No. 7.) However, at this juncture, the amended answer (ECF No. 53) filed on July 18, 2014, is the operative answer.

In the amended answer, the Defendants eliminated the first and ninth affirmative defenses and renumbered their affirmative defenses accordingly. In this Decision and Order, the Court refers to the discovery responses as they correspond to the current numbering of the defenses.

*Ins. Policy No. FL-10959 A & B v. Gen. Acc. Ins. Co. of Am.,* 909 F.2d 228, 231 (7th Cir. 1990). The party opposing summary judgment must set forth specific facts showing that a genuine factual issue exists. *See Smith v. Caterpillar, Inc.,* 338 F.3d 730, 733 (7th Cir. 2003); *Jeffries v. Chi. Transit Authority,* 770 F.2d 676, 679 (7th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate." *A & M Records, Inc. v. A.L.W., Ltd.,* 855 F.2d 368, 372 (7th Cir. 1988) (citation omitted.)

Design Basics has presented specific arguments with respect to the following defenses: statute of limitations (first); estoppel and laches (sixth); waiver (tenth); and, substantial similarity (eleventh) defenses.

**First** — Design Basics' claims may be barred by applicable statute of limitations (ECF No. 53).

Design Basics misinterprets the Court's ruling on its motion for judgment on the pleadings on statute of limitations grounds. (ECF No. 47.) The Defendants' defense is viable and will not be dismissed.

**Sixth** — Laches or equitable estoppel bar Design Basics from pursuing some or all of its damage claims against the Defendants.

Laches will bar this claim only if Design Basics inexcusably delayed

- 23 -

in asserting it and the Defendants have been materially prejudiced by the delay. *Jeffries,* 770 F.2d at 679. Laches is generally a factual question not subject to summary judgment. *Id.*

Estoppel applies only if the copyright owner is aware of the infringing conduct yet acts in a way that induces the infringer reasonably to rely upon such action to his detriment. *Chi-Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1228 (7th Cir. 1991). In other words, estoppel will only apply in this case if the facts (viewed in the light most favorable to the Defendants) reveal that Design Basics was aware of the infringing conduct but nonetheless took some action designed to encourage or mislead the Defendants. *See Bourne Co. v. Hunter Country Club, Inc.,* 990 F.2d 934, 937 (7th Cir.1993).

Construed in the light most favorable to the Defendants, there are sufficient facts upon which a reasonable jury could find for the Defendants on these issue. These defenses will not be dismissed.

**Tenth** — Waiver of copyright interest. By asserting waiver, the Defendants claim Design Basics made a "voluntary, intentional relinquishment of a known right." *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.,* No. 02-C-2523, 2003 WL 1720073, at *8 (N.D. Ill. 2003). The Defendants have presented sufficient evidence to support this

- 24 -

defense. Consequently it is not subject to dismissal.

**Eleventh** — Substantial similarity.

Design Basics states that this is not a true affirmative defense. Regardless of proper characterization, there is a factual dispute regarding substantial similarity. Design Basics' request for dismissal of this issue is denied without prejudice.

As to the majority of the defenses, Design Basics' arguments on these issues are not well-developed and lack of any citation to authority. Undeveloped arguments are waived. *Goren v. New Vision Int'l,* 156 F.3d 721, 726 n. 2 (7th Cir. 1998). Therefore, the following defenses will not be dismissed at this juncture.

**Second** — Failure to state a claim.

**Third** — One or more defendants may have been improperly joined or not subject to suit.[12]

**Fourth** — Failure to join one or more necessary parties.

**Fifth**— Failure to mitigate damages based on Design Basics' failure to send a cease and desist letter to the Defendants after its May 2010 discovery of the alleged infringements.

---

[12] The Defendants clarify their improper joinder defense stating that Design Basics has not provided any evidence that Defendants Albert and/or Joel Fleischmann are individually liable

- 25 -

**Ninth** — Work may have originally been for hire so there is no copyright infringement claim for such works.

**Twelfth** — The Defendants' copyrights in their own plans.

**Thirteenth** — De minimus use.

In sum, Design Basics' partial summary judgment motion is granted with respect to the fourth affirmative defense and denied with respect to all other affirmative defenses and with respect to the validity of Design Basics' copyrights.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Design Basics' motion for costs (ECF No. 128) is **DENIED**;

The Defendants' summary judgment motion (ECF No. 129) is **GRANTED** with respect to the eight DMCA infringement claims predating October 28, 1998, which are **DISMISSED**, and **DENIED** in all other respects.

The Defendants' request for dismissal of Design Basics' claims based on the Colbourne plan is **GRANTED**; and

Design Basics' motion for partial summary judgment (ECF No. 134) is **GRANTED** with respect to the fourth affirmative defense and **DENIED** in all other respects.

- 26 -

Dated at Milwaukee, Wisconsin, this __7th__ day of June, 2016.

BY THE COURT:

HON. RUDOLPH T. RANDA
U.S. District Judge

Case 2:13-cv-00560-WCG   Filed 06/07/16   Page 27 of 27   Document 156