UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DESIGN BASICS, LLC,

        Plaintiff,

v.                                                                Case No. 13-C-560

DREXEL BUILDING SUPPLY, INC., et al.,

        Defendants.

## DECISION AND ORDER ON SPOLIATION AND VALIDITY

On August 1, 2016, the parties' attorneys appeared for an evidentiary hearing on the issue of whether Plaintiff's copyrights should be held invalid because of spoliation of evidence, a legal question I concluded should be decided prior to any trial. For the reasons given below, I conclude that the Defendants have not met their burden to establish the elements of spoliation. Accordingly, the case will be scheduled for trial, and the jury instructions will not include any reference to spoliation.

A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001). That party must show (1) that "the party having control over the evidence ... had an obligation to preserve it at the time it was destroyed"; (2) that the evidence was "destroyed with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense. *Id.* at 107–09. Any sanction imposed should be designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the

prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999) (internal quotation marks and citations omitted).

**I. Duty to Maintain Records**

At the outset, Design Basics argues that it did not have a duty to maintain the records in question. First, it notes that the files were destroyed following a massive roof leak during the winter of 2009-10, but it did not learn of the Defendants' infringing conduct until May 19, 2010. Thus, it cannot be charged with some kind of duty to maintain documents that would be relevant only to a lawsuit that was not even within the perception of those who decided to destroy the documents. In its view, the fact that it had previously filed four other copyright lawsuits should not create some kind of generalized duty to maintain documents relevant to claims that did not yet exist.

The Defendants argue, however, that Design Basics was a sophisticated party whose business relied in part on litigation, and thus it should have known that the documents were material to any litigation it might later bring, even if this particular lawsuit was not on the horizon at the time. Design Basics protests that in 2010, when the files were destroyed, it had filed a mere four copyright lawsuits in its entire history. As such, it was not a "serial litigator" whose business model was based on litigating its copyrights, but merely a home designer that occasionally sued for infringement. Moreover, the individuals who ultimately decided to destroy the boxes were not key players in any litigation in which the company had engaged.

Defendants rely principally on *Phillip M. Adams & Assocs., LLC v. Dell, Inc.* for the proposition that a party may be held to a duty to preserve evidence even when specific litigation is not imminent. 621 F.Supp.2d 1173 (N.D. Utah 2009). There, the court noted that the duty to

2

preserve could be triggered at a time other than notification of (or imminence of) a specific lawsuit. In that case, lawsuits and news stories about the intellectual property at issue had been prevalent, and the court concluded that the defendant should therefore have been preserving evidence about the issue at that time. *Id.* at 1191.

Here, I conclude that the present lawsuit was too remote and speculative to give rise to a duty to preserve the evidence in question. *Adams*, a patent case, involved publicity about the same technology that underlay the *Adams* lawsuit. The court concluded that because problems with that technology had been widely known in the industry, the defendant should have anticipated a lawsuit about it. Here, by contrast, the Defendants do not argue that Design Basics was on any kind of notice that the copyrights at issue in *this* lawsuit were being infringed, or that litigation about those copyrights was imminent. Instead, they merely allege that Design Basics *as a general principle* was experienced with litigation and understood the copyright process. That is not what *Adams* stands for. In fact, if filing a number of *other* copyright lawsuits is enough to create a duty to preserve, than any company of any size would be deemed "sophisticated" (the Defendants' term) and thereby placed on some sort of general duty to preserve any and all records about its copyrighted material simply because they *might* one day discover infringement.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or *reasonably foreseeable* litigation." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,* 685 F.Supp.2d 456, 465 (S.D.N.Y. 2010) (italics added). By the Defendants' logic, the mere existence of a copyright makes it "reasonably foreseeable" that litigation would ensue at some point. Clearly, the duty to preserve cannot be so broad. Instead, courts have found that it extends only to pending litigation or litigation

3

that is imminent or at least foreseeable. "The duty to preserve evidence includes any relevant evidence over which the non-preserving entity had control and reasonably knew or could reasonably foresee was material to a potential legal action." *China Ocean Shipping (Grp.)Co. v. Simone Metals Inc.,* No. 97 C 2694, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999). Here, there was no "potential legal action" at the time of destruction, unless one accepts the Defendants' unstated premise that legal action goes hand-in-hand with the mere possession of a copyright, nor, as discussed below, was there any reason to believe that the destroyed files might contain relevant evidence.

In sum, the infringement in this case was not discovered until after the files were destroyed. Given that fact, no party could reasonably foresee that the destroyed materials would be relevant to the copyright issues the Defendants now raise in this lawsuit. The logical conclusion of the Defendants' argument is that almost any company reliant on intellectual property has some sort of generalized duty to maintain records, but that is not what the law requires. Accordingly, I conclude there was no duty to preserve the evidence in question.

**II. The Destruction of Design Files**

In short, following a long-term roof leak, several boxes of Design Basics' documents became water-logged. There was credible testimony that the boxes were marked "CC," which stood for custom change orders, which are orders in which customers alter Design Basics' plans. In other words, the boxes were not marked in a way that would make it obvious that they contained potentially important documents relating to the creation of the Plaintiff's copyrighted designs. The company hired remediation specialists and eventually discarded the boxes of documents, although the circumstances surrounding the boxes' destruction are somewhat murky.

4

Even if there were a duty to preserve in this case, I conclude that the Defendants have not established that the Plaintiff intended to destroy relevant evidence. First, the foreseeability issue addressed above applies with equal force to the question of intent, or culpability. Given how remote the possibility of a lawsuit was, it is difficult to conclude that Design Basics employees had a culpable state of mind when they decided to destroy the boxes. It is too far of a stretch to conclude that a Design Basics employee seized on the happenstance of serious water damage to destroy records on the off-chance that they *might* be relevant to a lawsuit the company *might* file one day. This is particularly true given the fact that the records appear to have indiscriminately included copyright information as well as all kinds of other design and customer records. It is much more likely that the people involved simply decided to destroy everything, without giving it much thought, rather than that they believed some sort of harmful documents were contained in the boxes. If they had wanted to spoliate, they could have done so much more discriminately.

Second, the destruction followed the occurrence of a serious destructive event, the facts of which are not contested. There was credible testimony that several employees eventually suffered health problems due to the air quality in the building following the roof leak. (Tr. 66.)[1] The boxes were undeniably damaged, with some of their contents being illegible due to water damage. (Tr. 81.) Third, the boxes were not marked in a fashion that would lead the decisionmakers to conclude that they contained documents relevant to potential litigation. Instead, they were marked "CC," indicating that they contained customer change orders. In fact, the company did not even know exactly what was inside the boxes. (*Id.*) Given all these circumstances—the remoteness of any litigation, the serious roof leak, and the absence of clearly marked boxes—I found the Plaintiff's

---

[1] The transcript of the evidentiary hearing is found at ECF No. 226.

5

version of events credible.

Third, the Defendants do not explain exactly what they believe these files would have contained. The implicit premise underlying their efforts must be that the files would contain damning evidence that the Plaintiff copied its designs from others, but that presumes that a company who has defrauded the copyright office would have kept such evidence stored in its files in the first place. If Design Basics had indeed copied others' designs, it would be unlikely to store that evidence in boxes along with its other copyright files.

The Defendants make much of the fact that the Plaintiff's employees' testimony differed regarding the decision to destroy the evidence. They view the changing stories as suspicious, but in actuality the Plaintiff's version of events stands up to scrutiny. With 20/20 hindsight, and with a motive to find wrongdoing, discrepancies in a story can sometimes appear suggestive of malfeasance and / or mendacity. But a far more mundane explanation appears more likely. If a typical person is asked to provide details as to how a given box of documents was thrown away several years earlier, it would not be surprising if he struggled to remember and if witnesses gave varying accounts. Throwing out boxes is not the kind of event that tends to linger in memory, and so when different people are asked repeatedly about who made the decision and which date the boxes were destroyed, it would actually be surprising if they got all the facts straight. Indeed, if they had actually decided to destroy evidence they believed would be material in some future lawsuit, one would expect a more polished and consistent account in which everything lined up neatly. In short, the inconsistencies the Defendants cite are not glaring enough "smoking guns" to be suggestive of anything more than the fact that a few people have provided slightly different stories about how some boxes were disposed of several years earlier. For all of the reasons cited above,

6

I conclude that the Defendants have failed to establish spoliation.

**III. Incomplete Copyright Applications**

In addition to the spoliation issue, a recent disclosure of records pertaining to eight copyrighted designs gave rise to an issue about the Plaintiff's copyright applications. Specifically, seven of the eight recently disclosed records indicate that the designs were derivative of other designs. However, the copyright applications Design Basics filed fail to indicate that they are derivative works. The Defendants thus argue that it is reasonable to conclude that most of the other copyrights asserted in this case were also derivative works, which Design Basics did not disclose in its applications. As such, the copyrights should be deemed invalid because we have no way to know whether the copyright office would have issued copyrights had it been provided with complete information.

Under 17 U.S.C. § 409(9), "Space 6" of the copyright application must include "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." However, if the copyright holder is also the author of the undisclosed underlying work, courts appear willing to overlook deficiencies in the application. "Plaintiff is the author of the Roscommon plan, which it used to create the Houghton Lake plan. Although it did not register the Houghton Lake plan as a derivative work, that is immaterial. The plan, in its entirety, was Plaintiff's own creation. To deny Plaintiff protection for that plan, simply because it failed to identify an earlier version it created and incorporated, would contravene the purpose of rule 409(9)." *Dorchen/Martin Associates, Inc. v. Brook of Cheboygan, Inc.,* No. 11-10561, 2012 WL 4867608, at *6 (E.D. Mich. Oct. 15, 2012). "The issue raised by § 409(9) is whether and to what extent the derivative design

7

incorporates elements designed by someone else. Where, as here, the evidence indicates that Betz created derivative designs based on its own original designs, the concerns that § 409(9) raises are not implicated." *Frank Betz Associates, Inc. v. J.O. Clark Const., L.L.C.,* No. CIV.A 3:08-CV-00159, 2010 WL 2253541, at *11 (M.D. Tenn. May 30, 2010).

Design Basics says that to the extent the designs in question were derivative, they were derivative of its own prior work or that of people it hired. The problem, which the Defendants point out, is that the records were destroyed, and all we know is that some large number of the copyrights were probably derivative. We do not even know *which* copyrights were derivative, much less to what extent they might have been derivative of previous works. Neither is there any evidence as to whether all of the derivative designs were based on Design Basics' own designs or those of anyone else. Thus, the Defendants believe all we have is attorney's representations rather than any actual evidence that the copyrights-in-suit were all derivative of the Plaintiff's own designs, rather than those of any third parties.

It is true that because the files were destroyed, there is scant evidence supporting Design Basics' assertion that, to the extent its copyrights are derivative, they are derivative of its own works. But a similar problem plagues the Defendants—there is no evidence that the designs were *not* derivative of Design Basics' own works. In fact, out of the eight design files that were recently produced, the Defendants have not identified any design elements that are based on designs other than Design Basics' own. And Design Basics' designer, Carl Cuozzo, explained his view that Design Basics always created designs "from scratch," which in his view meant it used only its own original designs rather than referring to others' works. (ECF No. 227-1 at 18-20.) In other words, "scratch" did not mean they started on a blank slate, but merely that any works they relied on were

Design Basics' previous designs. Accordingly, the only evidence we have is that Design Basics relied only on its own works or on change orders it hired out, for example, to W. L. Martin. (ECF No. 227-3.) Given that testimony, and given what we know from the eight design files it did produce, there is no reason to believe that any of its copyrights were derivative of works Design Basics did not already own.

In addition, my conclusion that the copyrights are not invalid under § 409(9) dovetails with my conclusion on spoliation. Although the Defendants' concerns are understandable, I have concluded that the Plaintiff suffered a legitimate act of nature that resulted in the destruction of many of its records. The Defendants have not cited any precedent suggesting that there is some kind of independent duty to maintain records, or that copyrights are only enforceable if the holder maintains all of his underlying documents. It would be one thing if the recently produced files were suggestive of the copying or use of others' work, but Design Basics' explanation that the designs were all in-house or for-hire works (e.g. ECF No. 227-3) was credible. Given the destruction of many of the underlying files, of course the Defendants believe it is unfair that they are deprived the ability to challenge the copyrights in the fashion they see fit. Yet, having concluded that the documents were destroyed innocently, and that there was no duty to maintain the documents in the first place, it would be even more unfair to deprive a copyright holder of its ability to enforce its intellectual property rights. The Defendants' argument on registration therefore rises or falls with its spoliation argument.

**IV. Validity**

Prior to the hearing, the parties also briefed the question of validity. Specifically, at the summary judgment stage, the Defendants challenged the originality of all of the copyrights in suit

9

by arguing that they did not contain creative material; on that score, their expert witness testified that the designs merely represented run-of-the-mill basic homes that were designed to meet conventional functional needs. (ECF No. 143-1 at 81; 93-94.) Judge Randa ordered the Plaintiff to supplement the record by explaining why each of the asserted copyrights was original, and the Plaintiff responded with a brief filed on June 30, 2016. The Defendants view the brief as inadequate to establish validity.

I am satisfied that the Plaintiff has established the originality of its copyrights. The Defendants retained an architectural expert to opine that there was nothing creative about the Plaintiff's designs, but I conclude that the expert was rendering an artistic or architectural opinion rather than an opinion that was cabined by the very narrow meaning of the word "originality" within copyright law. In truth, Professor Greenstreet's opinions would render almost every home design uncopyrightable because most homes designed for middle class families follow a number of conventional rules that have been applied to dwellings for hundreds of years. To the naked eye, and to a professor of architecture, such designs appear humdrum and wholly unsurprising, perhaps, but Congress has determined that such designs are copyrightable. The test for originality, therefore, simply asks whether the copyright holder came up with the idea himself or not—it is not a searching inquiry into principles of architecture or design. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 362 (1991) ("originality is not a stringent standard; it does not require that facts be presented in an innovative or surprising way.") "The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* at 345 (citation omitted).

Here, the designs in question are home designs. (ECF No. 137-1 through 40.) As such, they

10

display some modicum of creativity above and beyond, say, simply arranging people's phone numbers and addresses alphabetically. *Id.* Absent evidence of copying, this court could not conclude that the copyrights are invalid. "Originality in this context means little more than a prohibition of actual copying." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.,* 329 F.3d 923, 929 (7th Cir. 2003) (quoting *Alfred Bell & Co. v. Catalda Fine Arts,* 191 F.2d 99, 103 (2d Cir.1951)). The Plaintiff has therefore established validity.

**V. Conclusion**

For the reasons given above, I conclude the Defendants have failed to establish spoliation of evidence. Moreover, the failure to identify its works as derivative does not render the Plaintiff's copyrights unenforceable. Finally, I conclude that the copyrighted designs are sufficiently original. The clerk will arrange a telephonic scheduling conference to set a pretrial and trial date.

Dated this 12th day of September, 2016.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

11