UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DESIGN BASICS, LLC,

        Plaintiff,

v.                                                                                 Case No. 13-C-560

DREXEL BUILDING SUPPLY, INC., et al.,

        Defendants.

## DECISION AND ORDER ON MOTIONS *IN LIMINE*

**1. Docket No. 184 – Motion to Exclude Testimony of Robert Greenstreet, Ph.D.**

The most significant motion presently before me is Plaintiff's motion to exclude the testimony of Robert Greenstreet, Ph.D., a licensed architect and the dean of the School of Architecture at the University of Wisconsin-Milwaukee. The Defendants proposed to offer Dr. Greenstreet to give opinions on both validity (originality) and infringement.

I have already rejected Dr. Greenstreet's opinions as to validity, finding that the designs at issue have a modicum of creativity, within copyright law's narrow meaning of that term, sufficient to be copyrightable. The second question he proposes to testify about is infringement. In short, he would testify to help explain to the jury the Defendants' view that their home plans are sufficiently different that they do not infringe. The Plaintiff argues that, as with the originality question, Dr. Greenstreet lacked knowledge as to the meaning of substantial similarity within copyright law. In his report, he states that he "critically compared" the designs to determine whether they were substantially similar. However, the Plaintiff argues, the test for substantial similarity is not based

on an architectural expert conducting a "critical comparison," it is based on the more humble "ordinary observer" test first articulated by Judge Learned Hand some 56 years ago. Under that test, "two works are substantially similar if 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 509 (7th Cir. 1994) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960)).

In determining infringement, the Seventh Circuit has adopted a two-part test. The first question is whether the Defendant copied the Plaintiff's work, while the second asks whether what was copied was the *protectable* part of the Plaintiff's creation. *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 614 (7th Cir. 1982). The test is sometimes described as confusing, or "somewhat nebulous." *Nash v. CBS, Inc.,* 704 F. Supp. 823, 826 (N.D. Ill. 1989). In practice, the two prongs of the test often collapse into one, as in *Atari* and *Incredible Techs., Inc. v. Virtual Techs., Inc.,* 400 F.3d 1007, 1011 (7th Cir. 2005).

In *Francescatti v. Germanotta,* Judge Aspen of the Northern District of Illinois conducted a thorough examination of the propriety of relying on expert testimony in copyright cases. 2014 WL 2767231, at *8 (N.D. Ill. June 17, 2014). In that case, which involved copyrighted songs the court described as computer-generated and complex, the court concluded that expert testimony was appropriate, given how complex the music was. *Id.* However, the testimony was only useful in determining the first part of the two-part infringement analysis (copying); it was *not* appropriate for determining whether what was copied was the *protected* expression. This conclusion echoes other cases in this district and other circuits, such as the Second. *See Design Basics, LLC, et al. v. Lexington Homes, Inc.,* No. 14-C-1102, ECF No. 100 at 8-9 (E.D. Wis. September 30, 2016);

2

*Wildlife Exp. Corp. v. Carol Wright Sales, Inc.,* No. IP 89-844-C, 1992 WL 597841, at *2 (S.D. Ind. Aug. 13, 1992) ("When considering the first test, one must compare the two works in their entirety, including both the protected and the nonprotected portions . . . . To aid in making this comparison, expert testimony analyzing each work and dissection of the parts of the work may be employed.")

As its name suggests, however, the "ordinary observer" test should not rely on the opinions of an expert. "It has been said that this test does not involve 'analytic dissection and expert testimony,' but depends on whether the accused work has captured the 'total concept and feel' of the copyrighted work." *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 614 (7th Cir. 1982) (citations omitted). "While dissection is generally disfavored, the ordinary observer test, in application, must take into account that the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright." *Id.* Thus, the expert should not testify about *whether* the defendants copied the plaintiff's protected work. But that does not mean an expert must play no role at all in the analysis. Specifically, in answering the ordinary observer question, a jury will need to determine in a general sense what aspects of home designs are, and are not, protectable. The court will instruct the jury as to what the law provides: for example, elements that merely echo customary styles or industry standards are not protectable. *Home Design Svcs., Inc. v. Turner Heritage Homes Inc.,* 825 F.3d 1314, 1324 (11th Cir. 2016). In addition,

> Any design elements attributable to building codes, topography, structures that already exist on the construction site, or engineering necessity should . . . get no protection. There are scènes-à-faire in architecture. Neoclassical government buildings, colonial houses, and modern high-rise office buildings are all recognized styles from which architects draw. Elements taken from these styles should get no protection. Likewise, there are certain market expectations for homes or commercial buildings. Design features used by all architects, because of consumer demand, also get no protection.

3

*Zalewski v. Cicero Builder Dev., Inc.,* 754 F.3d 95, 105 (2d Cir. 2014).

Although the court will instruct the jury as to what is protectable in an abstract sense, it is reasonable to believe an expert in architecture could testify to the *facts* underlying the protectable/unprotectable distinction. For example, he could identify engineering or design requirements that are common to all single-family homes; he could explain which features are common to a given style or floor plan; and he could identify aspects of room placement and flow that are inherent in home design. *See, e.g., Home Design Svcs.*, 825 F.3d at 1318 (expert "began by reviewing the industry standards governing the overall layout of a four–three split plan, and describing the various considerations that drove the standards.") By testifying in such a fashion, an expert would not usurp the jury's role in determining whether any copying was copying of protected material. Instead, he would be providing the underlying factual information that the jury could use to determine whether what was copied was protected.

To summarize, then, an expert may offer opinions relevant to copying, although it is unclear the extent to which that question is at issue in this case. Presumably, Greenstreet's expertise could assist the trier of fact by highlighting differences in the works and explaining why those differences tend to show an absence of copying. "If there is evidence of access and similarities exist, then the trier of the facts must determine whether the similarities are sufficient to prove copying. On this issue, analysis ('dissection') is relevant, and the testimony of experts may be received to aid the trier of the facts." *Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir. 1946). The expert's testimony may also aid the jury in understanding elements of single-family homes that are common to a given style or design. But the expert's testimony may not stray into the more subjective question, which asks whether the Defendants copied the Plaintiff's protected material. "If copying is established, then

4

only does there arise the second issue, that of illicit copying (unlawful appropriation). On that issue . . . the test is the response of the ordinary lay hearer; accordingly, on that issue, 'dissection' and expert testimony are irrelevant." *Id.* Accordingly, the motion to exclude will be granted in part and denied in part: it is granted in that Greenstreet will not be allowed to testify as to whether the Defendants copied any protected material, but it is denied in all other respects.

**2. Docket No. 164 – Motion to Limit Digital Millenium Copyright Act (DMCA) Damages**[1]

Defendants argue that the Plaintiffs should be entitled to a single DMCA statutory award for each alleged infringement at issue in this case. Under 17 U.S.C. § 1203(c)(3), a party may elect to recover an award of statutory damages for "each violation" of section 1201 or 1202, both of which prohibit removing copyright management information (CMI) or circumventing copyright protection systems. In the Defendants' view, this means each "act" that violates one of those sections gives rise to a single claim for statutory damages. In other words, even if fifty people ended up receiving the affected material, there was only one violation that could give rise to damages.

Unfortunately the parties are vague about what conduct is alleged to violate the DMCA, and so it is difficult to issue a ruling in the abstract. It seems the Defendants disseminated several copies of the same floor plan to builders at the same time, and thus they argue that issuing copies of the same house plan should be viewed as a single, discrete violation. The Defendants are correct inasmuch as the DMCA applies for each act violating the DMCA without respect to how many individuals are recipients of the affected work. The DMCA focuses on violating acts, not recipients. However, that does not mean distributing the same floor plan to multiple people constitutes a single

---

[1] Plaintiffs do not oppose the motions filed at ECF No. 172 and 180, and so I do not address them herein.

5

violation. The Defendants do not have any support for the contention that the DMCA would lump violating acts together merely because they involve the same floor plan or occur at the same time. Instead, the DMCA makes it a violation for each act. The *McClatchey* case, on which Defendants rely, proves the point, emphasizing that damages are available *per act*. There, it was happenstance that more than a thousand people received the violating images because there was only a single act (one email):

> The DMCA damages provisions are clearly focused on the defendant's conduct. Compare section 1203(c)(3)(A) (calculating statutory damages "per act"). In essence, the term "each violation" is best understood to mean "each violative act performed by Defendant." Thus, AP would violate the DMCA each time it wrongfully distributed a photograph to its subscribers. In this case, the Court concludes that AP committed only one alleged violative act by distributing the End of Serenity photograph to its PhotoStream subscribers, even though there were 1,147 recipients.

*McClatchey v. Associated Press,* No. 305-CV-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007).

Here, if the Defendants shared the same image *multiple times,* that would be multiple acts in violation of the DMCA. *McClatchy's* reasoning does not apply because it is based on a single act, not a single photograph. Under *McClatchy*'s line of reasoning, if the defendant had sent 1,147 emails, that would result in 1,147 violations even if the emails contained the same copyrighted photo. Accordingly, the motion in limine is denied.

**3. Docket No. 166 – Motion to Bar Testimony of Former Drexel Employees**

Defendants move to exclude testimony of former Drexel employees on the grounds that the statements are largely speculative and constitute inadmissible hearsay. For example, Edward Ochs was a designer at Cambellsport Building Supply (a Drexel entity) until 2006. He claims that he was

6

told to "cut off" anything with a copyright symbol on it. Brian Redig was a designer at two other Drexel entities and says that he was told to remove copyright information as well. Finally, Tyson Strebelinski, another designer, alleged that Cambellsport Building Supply had a practice of removing copyright information from plans that customers brought in.

These statements are neither "speculative" nor hearsay. In fact, they are the opposite of hearsay because they would be *in-court* statements (i.e. live witness testimony) about what each of these individuals witnessed. When proving the truth of a matter asserted, live testimony from percipient witnesses is the typical way to proceed. In fact, it is hard to imagine how a party could try a case without calling the very individuals who witnessed the statements or practices like the ones alleged. Their testimony is not hearsay. The motion will therefore be denied.

## 4. Docket No. 168 – Motion to Bar Carl Cuozzo From Offering Testimony Without Personal Knowledge

Carl Cuozzo was the senior designer of Design Basics, whose testimony would be offered with respect to the creation of the copyrighted plans in suit. The Defendants argue that he lacks personal knowledge as to how many of the plans were created, and thus he should be barred from testifying.

It is not clear the extent to which Cuozzo's testimony will be relevant anymore, at least on that topic. This court has ruled that the copyrights are sufficiently creative, and in that ruling I also noted that since the underlying files were destroyed, there appears to be no remaining evidence about their creation. I further concluded that Design Basics' "explanation that the designs were all in-house or for-hire works . . . was credible." (ECF No. 236 at 9.) To the extent the Cuozzo testifies on this topic, any questions about foundation may be addressed at that time, and in all

7

likelihood they will go to the weight of the evidence rather than its admissibility. For now, however, the motion will be denied.

**5. Docket No. 170 – Motion to Bar Plaintiff Regarding Drexel Employees' Perceptions about Illegality**

The Defendants also seek to bar any testimony from Drexel Employees suggesting that they believed they had "infringed" certain floor plans, because such statements consist of legal opinions rather than facts. The motion will be denied. To the extent any witnesses seek to offer legal opinions, the court will bar such testimony. However, as Design Basics notes, the state of mind of witnesses may be relevant to wilfulness. The jury may be instructed that the witnesses are not legal experts, of course, but whether they believed they were infringing valid copyrights is certainly relevant to any wilfulness inquiry.

**6. Docket No. 174 – Motion to Bar Recovery of Profits from Activity Occurring Before 2007**

Defendants also seek to bar Plaintiff from recovering profits Drexel may have earned from infringing activity prior to 2007 on the grounds that records of its revenue from that period have been destroyed. As such, they argue the Plaintiff is limited to recovery of statutory damages for any proven infringements from that period. The Plaintiff protests, but having spent significant efforts justifying its own destruction of records, it finds itself in a difficult position. Even so, it asserts that it should be entitled to attempt to prove its pre-2007 damages by extrapolating from the profits it can show it lost during the period for which records are available.

The fact that the copyright laws provide for statutory damages is an effort by Congress to address the very problem posed here. In a trademark case, the Second Circuit addressed the problem created when a defendant would fail to appear and cooperate in a lawsuit, thus depriving

8

a plaintiff the ability to prove its actual damages.

> Congress appears to have been motivated by a gap in the law: Plaintiffs who were victorious on their civil counterfeiting claims were often unable to obtain an adequate recovery in actual damages because counterfeiters often maintain sparse business records, if any at all. In passing the Act, which allows trademark plaintiffs to elect to recover statutory damages in counterfeit cases in lieu of actual damages, Congress apparently sought to ensure that plaintiffs would receive more than de minimis compensation for the injury caused by counterfeiting as a result of the unprovability of actual damages despite the plain inference of damages to the plaintiff from the defendant's unlawful behavior.

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012) (internal citations omitted).

The same holds true here. Given the Defendants' inability to produce evidence prior to 2007, it will be impossible for the Plaintiff to prove actual damages. Attempting to extrapolate from lost profits it can show after 2007 would be fraught with guesswork and speculation. And in fact the statute's damages provision indicates that, in seeking actual damages, "the copyright owner is required to present *proof* only of the infringer's gross revenue . . ." 17 U.S.C. § 504(b). When there is no proof of gross revenue, a Plaintiff cannot proceed. However, Congress has provided a remedy for this by allowing for statutory damages. Indeed, the lost profits that the Plaintiff *can* show will provide the court with a reference point for awarding statutory damages within the wide range provided by statute. *See Columbia Pictures Television, Inc. v. Krypton Broad, of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) ("If statutory damages are elected, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.") (quotation marks and alteration omitted). But the Plaintiff has not established any precedent for proceeding on actual damages when it concedes that there are no records of any gross revenues.

9

**7. Docket No. 176 – Motion to Bar Use of "Overlays"**

The Defendants also seek to bar the Plaintiff from using overlays in an attempt to show substantial similarity between the copyrighted designs and the Defendants' materials. They argue that what's important is whether the Defendants' designs infringe the protected expression in the copyrighted designs, not just whether their designs resemble them more generally. Using overlays, they believe, could improperly influence the jury by conflating the issues of general similarity with infringement of the expression that is protected.

I am not satisfied that the use of overlays would be sufficiently prejudicial to bar their use entirely. The Plaintiff states that its demonstrative overlays have "stripped" out the unprotected elements of its floor plans while preserving those elements that are protected, such as the overall form of the designs and the arrangement of spaces. What is and is not unprotected may be in dispute, however, which may require Plaintiff to avoid characterizing elements it has removed in that fashion. Regardless, the overlays could assist the jury in focusing on protectable elements rather than on the overall designs, which presumably incorporate a large number of "stock" features and qualities that are not copyrighted. The Defendants take issue with the Plaintiff's efforts, however, suggesting that the overlays have been doctored and will be misleading. If that proves to be the case, the court may reconsider its ruling at a future time. In addition, the Defendants may be able to make the same arguments to the jury, and they of course will be able to give their view as to why the jurors should not rely on the overlays. However, for now, I cannot say that their use as demonstrative exhibits is categorically unfair or prejudicial in the fashion the Defendants argue.

**8. Docket No. 178 – Motion to Bar Evidence of Past Copyright Infringement**

Defendants also move to bar the Plaintiff from citing previous instances in which they were

10

accused of violating other builders' copyrights, arguing that such references would be "bad acts" evidence under Fed. R. Evid. 404. The Plaintiff protests that it wants to cite the instances not to show conformity with past practice but to show that any infringement the Defendants committed in this case was willful.

Past instances of actual infringement would indeed be relevant to the willfulness question. However, here the evidence is thinner— the Plaintiffs merely cite evidence of *accusations* from two other builders, both of which resulted in settlements. The Defendants dispute the underlying allegations and never admitted culpability. It could be argued that allowing the evidence would therefore require a mini-trial about the nature of those allegations. *United States v. Groysman,* No. 10CR459 SJ RML, 2011 WL 6131286, at *2 (E.D.N.Y. Dec. 8, 2011). If offered for the limited purpose of establishing willfulness, on the other hand, all that need be shown is that the Defendants have previously faced copyright infringement accusations. That is, the merit and truth of those accusations is less relevant than the fact that they were made at all. It is the accusation, combined with the settlement, that arguably placed the Defendants on notice that their actions were causing others to call their conduct into question—regardless of the merit of those questions. If the allegations in *this* case are proven, a jury could (or could not) find their settlements with other parties relevant to their state of mind. A jury may properly be instructed to limit any inferences accordingly.

I conclude that evidence of prior accusations and perhaps settlements may be admissible. It will depend on whether the probative value of the evidence outweighs the danger of unfair prejudice, a determination that cannot be made without knowing the defense offered and evidence presented at trial. The motion will therefore be granted in that such evidence should not be offered

11

or referred to in the presence of the jury absent further ruling of the court.

**9. Docket No. 182 – Motion to Bar Testimony of Website Links**

Defendant also seeks to bar the Plaintiff from offering evidence that in 2006 one of the Defendants displayed links to six home plan websites on its own website. The Defendant's website directed customers to those sites, apparently for inspiration. At the time, the Plaintiff's own plans were shown on all six of those websites. Thus, the Plaintiff wants to show that the Defendants had access to its plans, and also that the Defendants had a general practice of relying on third-party copyrighted designs. The Defendants protest that there is no evidence that any of the numerous plans at issue in this case were available on those websites in 2006. Even if true, that is an argument they may make to the jury. The evidence, if credited, would tend to show access, even if it does not conclusively prove it. That is a classic factual dispute, not a ground for excluding evidence.

**10. Docket No. 184 – Plaintiff's Motion to Exclude Evidence**

**A. Evidence of Deductible Expenses**

The Plaintiff and Defendants agree that once a plaintiff shows the infringer's gross revenues, the burden is placed on the infringer to establish any deductible amounts. Here, the Defendants did not provide any information of such deductions during the discovery process, and so the Plaintiff believes they should now be barred from introducing evidence of deductions at trial. The Defendant responds that, at the time it provided its responses to the Plaintiff's original discovery requests, the case involved only three copyrights. At that time it had nothing responsive. The fact that it did not later supplement its responses once the case expanded should not preclude it from offering such evidence at trial.

This motion was originally made on the eve of trial, but the trial has now been postponed

12

until 2017. Given that change in circumstances, I am satisfied that there is enough time prior to trial to allow the Defendants to supplement their discovery responses and allow further discovery, if needed, by the Plaintiff. This will ensure no prejudice is suffered by the Plaintiff while staving off the overly penal result that the Defendant would have to surrender its gross revenues rather than just its profits. Accordingly, the motion will be denied.

**B. Evidence of Plaintiff's Lost Licensing Revenue**

Plaintiff will attempt to obtain the profits it lost due to the Defendants' infringement, while eschewing any effort at recovering license fees it was unable to charge due to the infringement. As such, it argues that any reference to license fees, or the abstract value of its plans, would be irrelevant and prejudicial because it would confuse the jury.

The Defendants argue that because records are missing for many of the homes in question, they should have the right to show license fees and other measures of actual damages, because these could assist the jury in awarding statutory damages. But juries do not award statutory damages, judges do. *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 345, 118 S. Ct. 1279, 1283, 140 L. Ed. 2d 438 (1998) ("Statutory damages are to be assessed in an amount that 'the court considers just.'"). The Defendants have therefore failed to show that the information in question is relevant to any claim being advanced by the Plaintiff.

**C. Reference to Previous *Marhofer* Litigation**

The Plaintiffs also want to bar the Defendants from raising any arguments based on the *Marhofer* litigation, in particular, the report of the magistrate judge regarding spoliation. This court has already decided the spoliation issue, and so it is difficult to see what relevance the prior litigation has. In fact, since the outcomes of the two cases are somewhat at odds, reference to that

13

litigation could be expected to confuse the jury. Accordingly, the motion to exclude reference to the previous case will be granted.

**D. Reference to Plaintiff's Litigation History**

Finally, Plaintiff seeks to exclude any reference to any suggestion that it is a frequent litigant, a copyright "troll," or that litigating copyright claims is part of its business model. The Defendant has not explained how any such evidence would be relevant to any of the facts at issue before the jury. The Plaintiff is not on trial, and thus its own history of litigation is irrelevant to any of the questions the jury must consider.

**III. Conclusion**

For the reasons given above, the following docket entries are hereby resolved as follows:

164 is denied; 166 is denied; 168 is denied; 170 is denied; 174 is granted; 176 is denied; 178 is granted; 182 is denied; 184 is denied in part and granted in part; and 185 is denied in part and granted in part. Because the rulings are in limine, they are subject to change and reconsideration as the circumstances of trial take place, but they are binding on the parties absent further ruling by the court.

**SO ORDERED** this 4th day of October, 2016.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court